NASHVILLE TRUST COMPANY, Guardian, v. THE PRUDENTIAL INSURANCE COMPANY OF AMERICA.

Middle Section.    October 13, 1928.

Petition for Certiorari denied by Supreme Court, February 9, 1929.

Lurton Goodpasture and J. G. Stephenson, of Nashville, for plaintiff.

Chas. C. Trabue, of Nashville, for defendant.

DEWITT, J.   The Nashville Trust Company as guardian of Robert T. Madden instituted this action to recover the sum of $3000 from the Insurance Company upon a group insurance policy issued by it on September 1, 1925 to the employees of the Nashville, Chattanooga & St. Louis Railway.   Robert T. Madden, thirty or more years of age was therein included among the insured having

been continuously employed as a switchman in the terminal yards at Nashville since October 9, 1917. The provision of the policy upon which this action was based is as follows:

"If the said employee while less than sixty years of age and while the insurance on the life of the said employee under said policy is in full force and effect, shall become totally and permanently disabled or physically or mentally incapacitated to such an extent that he or she by reason of such disability or incapacity is rendered wholly, continuously and permanently unable to perform any work for any kind of compensation of financial value during the remainder of his or her lifetime, the amount of insurance payable at death from natural causes will be paid to the said employee in monthly installments during two years, the first installment to be payable immediately upon receipt by the company of due proof of such disability or incapacity, in accordance with the provisions of said policy."

The amount specified in the policy to be payable at death from natural causes was $3000.

In the declaration it was alleged that the said Robert T. Madden on or before December 1, 1926, and while then less than sixty years of age and while in the employ of Nashville, Chattanooga & St. Louis Railway in Nashville, Tennessee, became totally and permanently disabled or physically or mentally incapacitated to such an extent that he, by reason of such disability or incapacity, was rendered wholly, continuously and permanently unable to perform any work for any kind of compensation of financial value during the remainder of his lifetime. The Insurance Company by proper plea denied all liability. The case was tried to a jury before the Circuit Judge. Two issues were submitted to the jury, first, whether or not Madden was totally, permanently and continuously incapacitated from work for compensation of financial value for the remainder of his life; and second, whether or not such incapacity, if it existed, did exist while the policy was in full force and effect, that is, while he was under employment with the railway. The defendant at the close of all the evidence moved the court to direct the jury to return a verdict in its favor, but this motion was overruled. The jury returned a verdict for the plaintiff. Upon the hearing of the motion for new trial the trial judge set aside the verdict of the jury and sustained the motion for peremptory instructions and dismissed the suit. The plaintiff thereupon moved for a new trial but the motion was overruled and the plaintiff filed and perfected its appeal in the nature of a writ of error to this court.

It is undisputed that Robert T. Madden was continuously in the employment of the railway until the close of the first day of De-

cember, 1926; that sometime during the following day he committed the crime of rape of a girl under twelve years of age; that on the night of that day he was arrested and placed in jail; that he was indicted and upon his arraignment a plea of present insanity was interposed in his behalf; that the result was a mistrial, the jury being unable to agree upon a verdict; that upon the second trial he by his attorneys withdrew his plea of present insanity and pleaded guilty; that thereupon he was by consent and without the introduction of testimony, adjudged guilty, the order reciting the finding and judgment of the jury as follows:

"That they find the defendant guilty as charged in the indictment with mitigating circumstances, and the jury do further say that the mitigating circumstances, being feeble-mindedness, and fix his punishment at life imprisonment in the State Penitentiary."

This was on March 11, 1927. Immediately thereafter Madden was taken to the penitentiary where he was put to work in the shirt factory and at such work he has been continuously engaged, rendering efficient service under guard and under the oversight of a foreman. At first he operated a machine but afterwards he was assigned to the work of assembling the parts of garments, carrying them to the different operators and getting them completed.

It is also undisputed that on April 1, 1927 the said Robert T. Madden, in an inquisition of lunacy in the county court of Davidson county, was adjudged to be of unsound mind as of December 1, 1926 and as of April 1, 1927, and as not having sufficient capacity for governing himself and looking after his business affairs, said judgment being based upon the verdict of a jury. Thereupon a guardian was appointed by the county court. The petition for inquisition of lunacy was filed by the wife of Madden, setting forth his imprisonment for life, the policy of insurance herein sued upon, his alleged incapacity by reason of physical or mental disability. A guardian ad litem duly appointed filed an answer admitting the judgment of conviction and the imprisonment, but neither admitting nor denying the allegations of the petition as to Madden's mental condition and demanding proof of each and every allegation of the petition. The only parties to said proceeding were Mrs. Madden as petitioner and Robert T. Madden as defendant. The Prudential Insurance Company of America was therefore not made a party nor does it appear that it was represented by counsel or otherwise took any part in said proceeding.

In support of the judgment dismissing this suit the Insurance Company insists, (1) that Madden's employment had ceased and determined when he committed the act for which he is imprisoned

for life; (2) that until that time he was abundantly able to work for compensation of financial value; (3) and that had he not committed said act and become imprisoned he would still be able so to work.

The plaintiff, however, insists that Madden, at that time, was feebleminded, with a peculiarly insane propensity to commit such a heinous crime; that by reason of this mental and physical condition he did commit the act, thereby incapacitating himself wholly, continuously and permanently to perform any work for any kind of compensation of financial value; and that the operation of this insane propensity terminated that ability to work which he possessed until the commission of the crime.

The motion for peremptory instructions was based upon the specific grounds that there was no evidence sufficient to go to the jury upon the issue of mental unsoundness; that Madden was not shown to have become incapable of work while the policy was in force; that his inability to work outside of the penitentiary resulted from his crime and his voluntary plea of guilty; and that he is now working for compensation. It did not include the contention that the undisputed evidence showed that his employment had ceased and determined when he committed the act for which he was imprisoned. The rule is that where the party making such motion undertakes to specify the grounds thereof, he will on appeal be confined to the grounds specified. This was held by the Supreme Court of this State in the case of City of Nashville v. Mrs. Clara Hull, December term. 1917, opinion by Mr. Justice Green, unreported; also by the Court of Civil Appeals in the case of Knoxville Railway & Light Co. v. Henderson, Administrator, opinion by Judge Faw, 1923. Therefore this proposition will not be considered in testing the correctness of the action of the trial judge in granting peremptory instructions. But the undisputed evidence shows clearly that Madden was physically and mentally capable of performing work, and did work, up to the time of the commission of the crime, for compensation of financial value, and that he is still able to perform such work, and is only prevented therefrom by his imprisonment for the crime. It appears indisputably from the testimony of the foremen under whom he worked for many years and until the crime was committed that he rendered efficient service, working regularly, as a switchman, coupling and uncoupling cars, throwing switches, taking engines to different places, breaking up trains and organizing other trains, etc; and that he earned about seventy cents an hour for this service. It appears indisputably that he gave "extra good service and never made a mistake." One of the foremen says, "He was about as good a helper I suppose that ever worked with me; that is I never did have to correct him.

After once telling him what I wanted done I do not remember ever having to correct Taylor Madden after explaining to him what I wanted done. Lots of time you find some you tell two or three things to do and probably before they would get to the second one they might have done started it wrong, go at it backwards in the place of going at it in the right way.''

There was evidence tending to show that Madden had some peculiarities of disposition; that there was insanity in his family; that he had the mentality of a child about twelve years of age; that he had an abnormal and irresistible propensity to commit such an act as he committed. The testimony of Dr. Peterson, a psychologist of great learning and much experience in applying intelligence tests, was that Madden was afflicted with "neural instability;" and Dr. Henry Morris stated an opinion that Madden was feeble-minded or of unsound mind, but as his opinion was based partly upon hearsay it was excluded by the trial judge. The trial judge instructed the jury that the record of the inquisition of lunacy in the county court was not evidence of the extent of Madden's incapacity in so far as it affected his earning capacity. No assignment of error is based upon this instruction. At the conclusion of the evidence and before the jury was charged, the trial judge sustained a motion of defendant's counsel to strike out the whole record of the inquisition and he sustained the motion in so far as the record should be treated as any evidence of the mental unsoundness of Madden, but overruled it to the extent of letting the record go to the jury for the purpose of showing the legality of the appointment of the guardian. No exception was taken by the plaintiff to his ruling. The question of the evidentiary value of the record of the county court as to mental unsoundness, whether or not such unsoundness should be presumed under the rule declared in Bond v. State, 129 Tenn., 75, 165 S. W., 229 and Pritchett v. Plater & Co., 144 Tenn., 406, 232 S. W., 961, is therefore not before this court for consideration. But above and beyond all of these matters we must hold that such evidence as tends to show mental unsoundness of this peculiar kind must yield to the undisputed fact that Madden was and is able to perform work for compensation of financial value; and that he is not totally and permanently disabled or physically or mentally incapacitated to such an extent that he by reason of such disability or incapacity is rendered wholly, continuously and permanently unable to perform such work. Had he not committed the crime he would have been performing such work. He is a prisoner for life because of the crime and not because he was incapacitated to perform work for compensation of financial value. The question must be tested by the ability to perform the work, because

under the contract sued on, if he could perform the work he would not be entitled to the disability benefits.

In other words, any presumption that Madden was incompetent to work on December 1, 1926 and any evidence tending to show a certain kind of mental unsoundness at that time must give way before the undisputed facts that he did work on that day as usual and that he had worked continuously for nine years up to that time in a position of responsibility, and is still mentally and physically able to perform work of a responsible character; and it must also give way to the undisputed fact that the cause of his failure to go on with his work the next day was his commission of the crime and his incarceration.

We therefore hold that the trial judge committed no error in sustaining the motion for peremptory instructions and dismissing the suit. All the assignments of error are overruled and the judgment of the circuit court is affirmed. The costs of the appeal will be adjudged against the plaintiff.

Faw, P. J., and Crownover, J., concur.